**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **FRANK TEDESCHI,** ) | **Case No. 1:06CV2411** |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **JUDGE ANN ALDRICH** |
| ) | |
| ) | |
| **APPLIED CONCEPTS, INC., et al.,** ) | |
| ) | |
| Defendants. ) | **MEMORANDUM OF OPINION** |

On October 5, 2006, plaintiff Frank Tedeschi ("Tedeschi") filed a complaint in the United States District Court for the Northern District of Ohio, Eastern Division, against defendants Applied Concepts, Inc. ("Applied Concepts"), Bingo Concepts, Inc. ("Bingo Concepts"), California Concepts, Inc. ("California Concepts"), John Adams ("Adams"), and William Coleman ("Coleman") (referred collectively hereinafter as "Concepts"), raising claims for breach of fiduciary duty, breach of contract, fraudulent inducement, age discrimination (O.R.C. §4112.02 et seq.), and wrongful termination in violation of public policy.  (Doc. No. 1).

On December 11, 2006, Concepts filed a motion to stay proceedings pending arbitration. (Doc. No. 22).  On January 8, 2007, Tedeschi filed a brief in opposition.  (Doc. No. 24).  On January 16, 2007, Concepts filed a reply.  (Doc. No. 25).

All issues have been fully briefed and are ripe for adjudication.  For the following reasons, Concepts' motion to stay proceedings pending arbitration is granted in part and denied in part.

## I. FACTUAL BACKGROUND

Tedeschi was the founding President and Treasurer of all three companies, Applied Concepts, Bingo Concepts, and California Concepts (referred collectively hereinafter as "the Companies"). At the times relevant to the complaint, Tedeschi was a co-shareholder with Adams and Coleman in the Companies. The Companies are in the business of manufacturing and distributing gaming products.

In July 2004, Tedeschi, Coleman, and Adams entered into a Buy-Sell Agreement regarding their shares of stock in the Companies. (Doc. No. 22-2). The "Purpose" section of the Buy-Sell agreement states in relevant part that, "the Shareholders acknowledge and agree that there is no established market for the sale of their shares at the present time and they wish to create a limited market for the disposal of their shares upon the conditions, terms, and occasioned by the events as herein described." (Doc. No. 22-2). Section XIV of the agreement is titled "DISPUTE RESOLUTION" and states in relevant part:

> All disputes arising in connection with this Agreement or any breach or claimed breach hereof shall be settled amicably by good faith discussion and negotiation among the Shareholders. Failing such amicable settlement, the Shareholders shall submit said disagreement to arbitration to be conducted by the American Arbitration Association, whose rules shall apply in all respects.

(Doc. No. 22-2).

Concepts allege that this arbitration clause in the Buy-Sell agreement requires that Tedeschi's claims be sent to arbitration. Tedeschi, meanwhile, maintains that the arbitration clause is inapplicable to his claims because they neither arise out of, nor in connection with, the terms of the Buy-Sell agreement.

## II. DISCUSSION

When considering a motion to stay proceedings and compel arbitration under the Federal Arbitration Act, 9 U.S.C.S. § 1 et seq, a court has four tasks:

> First, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted).

### A. Agreement to Arbitrate

There is no argument as to the existence or validity of the arbitration clause in the Buy-Sell agreement. (Doc. No. 24). Rather, the crux of the argument is the scope of the arbitration clause.

### B. Scope of Agreement

Concepts allege that the broad language of the arbitration clause, as well as the nature of the Tedeschi's claims, mandates that these claims be handled in arbitration and that the current matter before the court be stayed. Tedeschi, on the other hand, maintains that the scope of the arbitration clause is limited by the terms of that agreement; to wit, any challenge to the terms of the buying, selling, distributing, and pricing of shares among the directors of the Companies must be handled in arbitration, whereas these claims, outside the scope of the Buy-Sell agreement, are appropriately brought before the court. While the court agrees with Tedeschi that the arbitration clause it limited to the terms of the Buy-Sell agreement, the court finds that

Tedeschi's claim for breach of fiduciary duty must be stayed and is subject to the arbitration clause. The remainder of Tedeschi's claims are outside the scope of the arbitration clause.

When examining the scope of the arbitration agreement, "[a] proper method of analysis is to ask if an action could be maintained without reference to the contract or relationship at issue. If it could, it is likely outside the scope of the arbitration agreement." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003) (citation omitted). Additionally, the scope of the agreement should "focus on the factual allegations in the complaint rather than the legal causes of action asserted." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 622 n.9 (1985)).

Tedeschi's first claim for relief for breach of fiduciary duty cannot be maintained without reference to the Buy-Sell agreement, which is made clear from the factual allegations in the complaint. Specifically, Tedeschi alleges in his complaint that Adams and Coleman attempted to force him to "sell his shares in the Companies for less than full value." (Doc. No. 1, at ¶26). The pricing and sale of Tedeschi's shares of stock after his termination is governed by the terms of the Buy-Sell agreement, as dictated in Sections VII("Involuntary Termination of Employment"), VIII("Purchase of Shares from a Terminated Shareholder"), and IX("Determination of Purchase Price"). (Doc. No. 22-2). Furthermore, Tedeschi alleges that Adams and Coleman breached their fiduciary duties by "revis[ing] the Share Price of the Companies for purposes of the Buy-Sell Agreement." (Doc. No. 1, at ¶29). Again, two paragraphs later, Tedeschi alleges that the behavior of Adams and Coleman "deprived Plaintiff[Tedeschi] of his fair value buyout under the terms of the buyout agreement between the shareholders." (Doc. No.1, at ¶31). In both instances, specific mention is made of the Buy-Sell

agreement and the pricing of shares.  While in his opposition brief Tedeschi maintains that other facts are pertinent to the breach of fiduciary duty, such as the failure to provide notice of the annual meeting, and termination of Tedeschi without business justification, he fails to explain the specific references to the Buy-Sell agreement.  Moreover, "[i]t is settled authority that doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Stout*, 228 F.3d at 715 (citations omitted).  The references to the price of shares as well as the Buy-Sell agreement make it sufficiently clear, or at the very least establishes sufficient doubt, in favor of arbitration.  Given that reference must be made to the Buy-Sell agreement, and reference *is* made in the complaint, the court finds that the claim for breach of fiduciary duty arises in connection with the Buy-Sell agreement and is therefore subject to the mandatory arbitration provision.

**B.2    Remaining Claims Are Not Subject to the Arbitration Clause**

Tedeschi's second claim, breach of contract, is outside the scope of the arbitration clause.  This cause of action does not make reference to the Buy-Sell Agreement, nor would reference to the Buy-Sell agreement be necessary to maintain this claim.  Specifically, this claim merely makes reference to an agreement between Tedeschi and Adams to vote together on corporate actions involving the Companies.  (Doc. No. 1, at ¶35).  Concepts, however, allege that the broadness of the arbitration clause brings this claim within its reach.  Specifically, Concepts argue that the language, "All disputes arising in connection with this Agreement," is broad enough to encompass the remaining claims.  The court disagrees. The Sixth Circuit has drawn a "clear line between the extensive applicability of general arbitration provisions and the more

-5-

narrow applicability of arbitration clauses tied to specific disputes. . . . [W]hen an arbitration clause by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included." *Simon v. Pfizer Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (citation omitted). Therefore, as discussed previously, the arbitration clause is limited to the scope of the Buy-Sell agreement. Because the breach of contract claim makes no reference to the Buy-Sell agreement, nor requires such reference to be maintained, the court finds that it is outside the scope of the arbitration clause.

For the same reasons, Tedeschi's fraudulent inducement claim is outside the scope of the arbitration clause. Here, the same oral contract as above is referenced, only now it is part of a fraudulent inducement claim. No facts are alleged relating to the Buy-Sell agreement, nor are any such references required to maintain the claim. Therefore, the court finds that the fraudulent inducement claim is outside the scope of the arbitration clause.

Following the same reasoning, Tedeschi's final two claims for age discrimination, and wrongful termination in violation of public policy are outside the scope of the arbitration clause. No facts are alleged relating to the Buy-Sell agreement, nor are any such references required to maintain these two claims. Therefore, the court finds that both the age discrimination claim and the wrongful termination claim are outside the scope of the arbitration clause.

## C. Arbitrability of Federal Statutory Claims

Tedeschi does not dispute the arbitrability of his federal statutory claims. Given, however, that the court finds that Tedeschi's final four claims are outside the scope of the arbitration clause, any further analysis with respect to this prong of the analysis would be

superfluous.

### D. Proceeding With Non-arbitrable Claims

It is within the court's discretion to proceed with the non-arbitrable claims while staying the fiduciary duty claim. *Stout,* 228 F.3d at 714*; see also Compuserve, Inc. v. Vigny Int'l Finance, Ltd.*, 760 F.Supp 1273, 1279 (S.D. Ohio 1990) (citing *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985)). The court is prepared to proceed with the remaining non-arbitrable claims brought by Tedeschi unless there is a joint motion from both sides seeking to stay the proceedings pending arbitration of the fiduciary duty claim. Barring such a joint motion, the parties should file a new joint status report in preparation for a Case Management Conference set for Friday, February 2, 2007, at 11:30 a.m. in chambers.

### IV. CONCLUSION

For the foregoing reasons, Concepts' motion to stay the proceedings pending arbitration (Doc. No. 22) is granted in part and denied in part. The court finds that Tedeschi's claim for breach of fiduciary duty is subject to the arbitration clause of the Buy-Sell agreement. Tedeschi's remaining claims are not subject to the agreement and the court denies Concepts' motion with respect to them. The court will proceed with those remaining claims barring a joint motion to stay them. A Case Management Conference is set for Friday, February 2, at 11:30 a.m. in chambers.

IT IS SO ORDERED.

  */s/ Ann Aldrich*
  UNITED STATES DISTRICT JUDGE

Dated: January 19, 2007